UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOOPER PARSLEY #399217,

    Petitioner,                      Hon. Paul L. Maloney

v.                                        Case No. 1:19-CV-306

GREG SKIPPER,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Parsley's Petition for Writ of Habeas Corpus (ECF No. 1) and his Motion to Amend Petition (ECF No. 15). In accordance with 28 U.S.C. § 636(b), the undersigned recommends that Parsley's Motion to Amend be granted, and that his amended Petition for Writ of Habeas Corpus be denied.

## BACKGROUND

As a result of events that allegedly occurred between September 1 and September 19, 2014, Petitioner was charged with three counts of third-degree criminal sexual conduct involving Sabrina Wheeler, an incapacitated victim.

1

Several individuals testified at Petitioner's jury trial.[1]  The relevant portions of their testimony are summarized below.

### Dale Smith

Dale Smith is Emily Smith's father.  (ECF No. 8-9, Trial Transcript, March 3, 2015, at 33-34).  Sabrina Wheeler and Emily Smith attend school together and have been friends for several years.  (*Id.*, PageID.241).  Emily Smith was then eighteen years of age and had participated in special education classes since "about second or third grade."  (*Id.*).  Dale Smith described his daughter as "a little slow" with the mentality of a young child.  (*Id.*, PageID.244).  Todd Wheeler is Sabrina Wheeler's father.  (*Id.*, PageID.242).  Dale Smith later learned that Emily Smith was having a relationship with Todd Wheeler and that she was spending the night at his residence.  (*Id.*, PageID.242-47).

### Emily Smith

Emily Smith met Todd Wheeler shortly before her eighteenth birthday.  (ECF No. 8-9; Trial Transcript, March 3, 2015, at 65-67).  She thereafter began spending time with Todd Wheeler.  (*Id.*, PageID.258-59).  After Emily Smith turned eighteen years old, she and Todd Wheeler began having sex.  (*Id.*, PageID.261-62).

---

[1] Petitioner was tried jointly, by a single jury, with Todd Wheeler who was charged with three counts of third-degree criminal sexual conduct involving Emily Smith, an incapacitated victim.

2

**Sabrina Jo Wheeler**

Sabrina Wheeler testified that she was then eighteen years old. (ECF No. 8-9; Trial Transcript, March 3, 2015, at 92). Sabrina Wheeler was then a special education student and had been so "for [her] whole life." (*Id.*, PageID.270-71). Todd Wheeler, Sabrina Wheeler's father, introduced Sabrina Wheeler to Petitioner. (*Id.*, PageID.271-72). Todd Wheeler informed Petitioner that she was a special education student. (*Id.*, PageID.274). Emily Wheeler and Petitioner nevertheless started spending time together and eventually began having sex. (*Id.*, PageID.272-73). Emily Wheeler understood the purpose of condoms and birth control, but declined to utilize either when having sex with Petitioner. (*Id.*, PageID.277-78). Despite having unprotected sex with Petitioner, Emily Wheeler was not concerned about getting pregnant or contracting a sexually transmitted disease. (*Id.*, PageID.287).

**Nicole Smith**

Nicole Smith testified that she was presently employed as a social worker for the Wyoming Public Schools and had worked in that capacity for more than ten years. (ECF No. 8-9; Trial Transcript, March 3, 2015, at 111-12). Nicole Smith worked with Emily Smith and Sabrina Wheeler for approximately four years. (*Id.*, PageID.280). Emily Smith is cognitively impaired whereas Sabrina Wheeler is emotionally and cognitively impaired. (*Id.*, PageID.280-81).

Sabrina Wheeler reads and performs math at "first to second grade" levels. (*Id.*, PageID.283). She "displays inappropriate types of feelings or behaviors under normal circumstances" and "the way she reacts is in a much less mature manner." (*Id.*, PageID.281-82). When Sabrina Wheeler was a junior in high school, she participated in a program for special education students at the Kent Transition Center, but "because of her behaviors, they placed her back at school." (*Id.*, PageID.282-83). Sabrina Wheeler also exhibited difficulty understanding appropriate social media behavior. (*Id.*, PageID.284-85). For example, she had "big issues" with respect to instruction that she not put her address on Facebook or "meet somebody when you've just met them on Facebook." (*Id.*, PageID.285).

**Jason Maas**

Jason Maas testified that he was employed as a school psychologist for the Wyoming Public Schools and had worked in that capacity for approximately seven years. (ECF No. 8-9; Trial Transcript, March 3, 2015, at 140).

Sabrina Wheeler is a special education student at Wyoming High School. (*Id.*, PageID.297-98). Specifically, she participates in a "program within a program" for "students with cognitive impairments." (*Id.*, PageID.298). With respect to academics, Sabrina Wheeler performs at a "first or second grade level." (*Id.*, PageID.302). On intellectual testing, she scored in the first percentile. (*Id.*, PageID.303).

4

Sabrina Wheeler suffers from an emotional impairment, which causes her to exhibit "inappropriate responses under normal circumstances." (*Id.*, PageID.300). She also exhibits difficulty understanding that "actions have consequences." (*Id.*, PageID.302-03). With respect to "adaptive functioning," Sabrina Wheeler functions at an "elementary level." (*Id.*, PageID.302). She also exhibits "hygiene issues." (*Id.,* PageID.301).

**Amol Huprikar**

As of September 2014, Amol Huprikar was employed as a police officer with the Kentwood Police Department. (ECF No. 8-9; Trial Transcript, March 3, 2015, at 177-78). On September 19, 2014, Dale Smith filed a report with another police officer, after which Huprikar became involved in the matter. (*Id.*, PageID.313-14).

As part of his investigation, Huprikar spoke with Todd Wheeler who acknowledged having a sexual relationship with Emily Smith for several weeks. (*Id.*, PageID.315-16). Huprikar also spoke with Petitioner who acknowledged having a sexual relationship with Sabrina Wheeler. (*Id.*, PageID.317). Specifically, Petitioner acknowledged the pair had sex "five to ten times." (*Id.*). Petitioner asserted, however, that he was unaware that Wheeler "had any mental incapacity or diminished capacity." (*Id.*).

5

**Vicky Wilson**

Vicky Wilson is a Limited License Psychologist whose practice "works exclusively with individuals with intellectual disabilities." (ECF No. 8-10, Trial Transcript, March 4, 2015, at 7). The trial court recognized Wilson as an expert in the area of behavioral psychology. (*Id.*, PageID.325-26). As part of the investigation into this matter, Adult Protective Services asked Wilson to conduct an evaluation of Emily Smith and Sabrina Wheeler to "determine if one or either of the girls would benefit from the services of a guardian." (*Id.*, PageID.327).

Intelligence testing revealed that Sabrina Wheeler possesses a full-scale IQ of 63 to 71. (*Id.*, PageID.333). Additional testing indicated that she experiences "a mild range of both cognitive and adaptive impairment." (*Id.*). Sabrina Wheeler also requires "prompts" from family members to ensure that her hygiene and attire is appropriate. (*Id.*, PageID.335). Wilson concluded that Wheeler "could be easily victimized" and, therefore, required the appointment of a guardian. (*Id.*, PageID.336-37).

**Dr. Jeffrey Kieliszewski**

Dr. Kieliszewski is a licensed psychologist who reviewed a variety of records and reports concerning Sabrina Wheeler for the purpose of assisting Petitioner's defense. (ECF No. 8-10, Trial Transcript, March 4, 2015, at 52-57). Dr. Kieliszewski, however, never met with Wheeler. (*Id.*, PageID.350).

6

In his review of the relevant material, Dr. Kieliszewski noted that "there wasn't any type of assessment pertaining to [Sabrina] Wheeler's competency to consent to sexual activity." (*Id.*, PageID.351, 354-55). The doctor further opined that simply suffering from a cognitive disability does not preclude the possibility that the individual is competent to consent to sexual activity. (*Id.*, PageID.353). In this respect, the doctor observed that people with cognitive impairments often maintain employment, get married, and engage in sexual relationships. (*Id.*, PageID.353-54). The doctor further opined that an "average person" may not be able to discern whether an individual suffering from a cognitive impairment lacks the ability to consent to sexual activity. (*Id.*, PageID.354). The doctor conceded, however, that determining whether a person with a cognitive impairment is capable of consenting to sexual activity requires an individualized assessment of the person in question. (*Id.*, PageID.356-57).

**Petitioner Hooper Parsley**

As of June 2014, Petitioner and Todd Wheeler lived together and had done so for approximately eighteen months. (ECF No. 8-10, Trial Transcript, March 4, 2015, at 83-84). Petitioner met Sabrina Wheeler in June 2014, and the two would spend time together when Sabrina visited her father. (*Id.*, PageID.358-59, 363-65). Petitioner and Sabrina Wheeler began having a sexual relationship in September 2014. (*Id.*, PageID.359, 360, 365). Petitioner discerned nothing to suggest that Sabrina Wheeler was impaired or otherwise unable to competently consent to sexual

7

activity.  (*Id.*, PageID.361-62).   The pair socialized with friends and Petitioner never received any feedback from his friends "that was negative as to Sabrina."  (*Id.*, PageID.362).   Despite helping Sabrina with her homework, Petitioner was not aware that she was a special education student.  (*Id.*, PageID.362, 367).

Following the presentation of evidence, the jury found Petitioner guilty of three counts of third-degree criminal sexual conduct.  (ECF No. 8-11, Trial Transcript, March 5, 2015, 5-7).  Petitioner, as a fourth felony offender with a previous conviction of criminal sexual conduct, was sentenced to serve fourteen to thirty years in prison.  (ECF No. 8-12, Trial Transcript, April 16, 2015, at 8-9). Petitioner appealed his convictions in the Michigan Court of Appeals asserting the following claims:

> I. The trial court violated Mr. Parsley's due process right to a fair trial by denying motions for separate trials or separate juries.
>
> II. Mr. Parsley was denied his state and federal due process rights where his convictions are not supported by sufficient evidence of an essential element of the crime, that the complainant was mentally incapable, mentally disabled, mentally incapacitated or physically helpless.

The Michigan Court of Appeals rejected Petitioner's sufficiency of the evidence and separate juries claims, but concluded that the trial court erred in trying Petitioner and Todd Wheeler together in a single trial. *People v. Parsley*, 2016 WL 5122023 (Mich. Ct. App., Sept. 20, 2016).  Accordingly, the court vacated Petitioner's convictions and remanded the matter for "a new, separate trial." *Id.* at *8. The Michigan Supreme Court vacated the holding that Petitioner was entitled to a new

trial, however, remanding the matter to the Court of Appeals to determine whether "the error in joining [Petitioner's] and Wheeler's trials was harmless." *People v. Parsley*, 897 N.W.2d 742 (Mich. 2017).

On remand, the Michigan Court of Appeals concluded that the joinder error was harmless and, accordingly, affirmed Petitioner's convictions. *People v. Parsley*, 2018 WL 1935976 (Mich. Ct. App., Apr. 24, 2018). The Michigan Supreme Court denied Petitioner leave to appeal this decision. *People v. Parsley*, 920 N.W.2d 594 (Mich. 2018). On April 12, 2019, Petitioner initiated the present action in which he asserts the following claims:

> I. The trial court violated Petitioner's due process right to a fair trial by denying his motion for separate trials.
>
> II. Petitioner was denied his right to due process where his convictions are not supported by sufficient evidence of an essential element of the crime, that the complainant was mentally incapable, mentally disabled, mentally incapacitated or physically helpless.
>
> III. The trial court violated Petitioner's due process right to a fair trial by denying his motion for separate juries.

## **STANDARD OF REVIEW**

Parsley's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

9

> merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). As the Supreme Court recently emphasized, this standard is "intentionally difficult to meet." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (internal quotation omitted).

Pursuant to Section 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state

court's application thereof to be *objectively* unreasonable.  *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12.

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Ibid.*

As previously noted, Section 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy either subsection therein. This requirement, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 562 U.S. 86, 100 (2011). Instead, if a state court rejects a federal claim, a federal habeas court "*must presume that the federal claim was adjudicated on the merits.*" *Johnson v. Williams*, 568 U.S. 289, 301 (2013). If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

11

## ANALYSIS

### I. Separate Juries Claim

As noted above, claim 3 in Parsley's petition before this Court is that his due process right to a fair trial was denied when the trial court denied his request to be tried by separate juries. The Michigan Court of Appeals rejected this claim on the ground that Petitioner "never requested a joint trial with separate juries." *Parsley*, 2016 WL 5122023 at *4. Petitioner now moves the Court to "amend the petition for writ of habeas corpus to reflect the voluntary removal of claim #3 from consideration." (ECF No. 15). The undersigned recommends that Petitioner's motion be granted and his petition be amended to reflect that Petitioner is only seeking relief based upon claims 1 and 2 identified above.

### II. Sufficiency of the Evidence

Petitioner was convicted of three counts of third-degree criminal sexual conduct. Under Michigan law, a person who engages in sexual penetration with a person who "the actor knows or has reason to know" is "mentally incapable" is guilty of third-degree criminal sexual conduct. *See* Mich. Comp. Laws § 750.520d(c). Petitioner argues that he is entitled to relief because his convictions are not supported by sufficient evidence. Specifically, Petitioner asserts that there was insufficient evidence that Sabrina Wheeler was mentally incapable.

Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury. *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). Furthermore, where the record supports conflicting inferences the Court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 326). To the extent Petitioner complains that the case against him was premised largely on circumstantial evidence, it must be remembered that "circumstantial evidence is entitled to the same weight as direct evidence" and "circumstantial evidence alone is sufficient to sustain a conviction." *United States v. Mack*, 808 F.3d 1074, 1080 (6th Cir. 2015)

Under Michigan law, "mentally incapable" means "that a person suffers from a mental disease or defect that renders that person temporarily or permanently incapable of appraising the nature of his or her conduct." Mich. Comp. Laws § 750.520a(j). Michigan courts have declined to interpret this language narrowly. For example, in *People v. Breck*, 584 N.W.2d 602 (Mich. Ct. App. 1998), the court expressly rejected an interpretation of this statutory language that would limit criminal liability only to circumstances in which the victim lacks "an awareness that the physical act is occurring." *Id.* at 604.

As the court recognized, to interpret the statute so narrowly "would strip the statute of the protection that the Legislature intended for those individuals . . . who know what is happening to them but are incapable of protesting or protecting themselves because of a severely diminished intellectual capacity." *Ibid.* Instead, the court found that the statutory language in question "is meant to encompass not only an understanding of the physical act but also an appreciation of the nonphysical factors, including the moral quality of the act, that accompany such an act." *Id.* at 605. As the court further noted, its interpretation was supported by the conclusion that a mentally incapable person "is presumed to be incapable of truly consenting to the sexual act." *Ibid.*

The evidence presented at trial, interpreted in a light most favorable to the prosecution, revealed the following. Sabrina Wheeler is emotionally and cognitively impaired. Academically, she functions at a first or second grade level. Wheeler

14

scores in the first percentile on intellectual testing. She exhibits inappropriate behavior and exhibits difficulty understanding that her actions have consequences. Wheeler also exhibits difficulty understanding that she should not post her address on social media or associate with people immediately after "meeting" them on social media. Wheeler requires assistance from family members to ensure that her attire and hygiene are appropriate. With respect to adaptive functioning, Wheeler functions at an elementary level. A psychologist determined that Wheeler "could be easily victimized" and, therefore, required the appointment of a guardian.

Sabrina Wheeler, despite professing to understand the purpose of condoms and birth control, had sex with Petitioner without using either type of protection. Moreover, despite having unprotected sex with Petitioner, Wheeler was not concerned about getting pregnant or contracting a sexually transmitted disease. While Petitioner claims that he was unaware that Wheeler was a special education student, Petitioner acknowledged helping Wheeler with her homework. Moreover, Wheeler testified that she expressly told Petitioner that she was a special education student.

The Michigan Court of Appeals rejected Petitioner's sufficiency of the evidence claim. *Parsley*, 2016 WL 5122023 at *1-3. As the court stated, a reasonable juror could find that Sabrina Wheeler "suffered from a mental defect that rendered her incapable of appraising the nature of her conduct and was therefore mentally incapable of consenting to a sexual relationship because she did not possess an

15

understanding of both the physical act and the accompanying nonphysical aspects of the sexual conduct." *Id.* at *3. In light of the evidence and relevant authority, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

### III. Separate Trials Claim

As previously noted, Petitioner and Todd Wheeler were tried in a single trial by a single jury. Petitioner argues that his right to a fair trial was violated by the trial court's decision to deny his request to be tried separately from Wheeler.

As has been recognized, however, the United States Supreme Court has never recognized a constitutional right to a separate criminal trial. *See, e.g., Orick v. Palmer*, 2015 WL 13614604 at *2 (6th Cir., Apr. 8, 2015) (citing *Zafiro v. United States*, 506 U.S. 534 (1993); *Mathis v. Haas*, 2017 WL 2351950 at *3 (E.D. Mich., May 31, 2017) (same). In the absence of such an affirmative constitutional right, Petitioner can prevail on this claim only if he demonstrates that the trial court's denial of his motion for separate trials: (1) compromised "a specific constitutional right" or (2) violated his right to a fair trial. *See Orick*, 2015 WL 13614604 at *2; *see also, Mathis*, 2017 WL 2351950 at *3.

Petitioner has not argued that he suffered a deprivation of any specific constitutional right as a result of his joint trial. Rather, Petitioner merely argues that such violated his general due process right to a fair trial. Specifically, Petitioner argues that his trial should have been conducted separately because his defense was "irreconcilable" with Todd Wheeler's defense, thus placing the jury in a position where it "would have to believe one defendant at the expense of the other."

Petitioner does not explain, and the Court cannot discern, how the defenses advanced by Petitioner and Todd Wheeler were inconsistent, irreconcilable, or compelled the jury to find Petitioner or Wheeler guilty on the basis of anything other than the evidence properly admitted as to each. Petitioner and Wheeler both advanced the defense that, while their victims may have experienced a certain level of cognitive impairment, both were fully capable of consenting to sexual activity. While several witnesses provided testimony regarding both victims, these witnesses were very careful to clearly identify the victim to which certain testimony applied. Petitioner has identified no error or prejudice as a result of the instructions provided to the jury. Moreover, the evidence of Petitioner's guilt was simply overwhelming.

As noted above, the Michigan Court of Appeals initially found that trying Petitioner and Wheeler together was error. It is important to note, however, that this conclusion was not based on a determination that the joinder deprived Petitioner of any constitutional right, but rather a finding that such violated the Michigan Court Rules. *Parsley*, 2016 WL 5122023 at *4-7. On remand, the Michigan Court of

17

Appeals, while noting that "there were several issues of concern as a result of joining Parsley and Wheeler's trials," nevertheless affirmed Petitioner's conviction, concluding that such did not violate Petitioner's right to a fair trial. Specifically, the court concluded:

> In sum, there was abundant "untainted" evidence, independent of [Petitioner's] relationship with [Todd] Wheeler, to question both [Sabrina Wheeler's] ability to consent to engage in a sexual relationship and [Petitioner's] knowledge or reason to know that [Sabrina Wheeler's] competency to consent was compromised. To the extent that [Petitioner's] knowledge presented a question of credibility, the jury was charged with making that credibility determination and did so based on the untainted evidence.

*Parsley*, 2018 WL 1935976 at *6.

In light of the evidence and relevant authority, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Parsley's Motion to Amend, (ECF No. 15), be granted and his Petition for Writ of Habeas Corpus, (ECF No. 1), be denied. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000); *Miller-El*, 537 U.S. at 336.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: March 2, 2020                           /s/ Phillip J. Green
                                              PHILLIP J. GREEN
                                              United States Magistrate Judge